## Case No. 8,465.

### LOGAN v. The AEOLIAN.

[1 Bond, 267.] [1]

District Court, S. D. Ohio. April Term; 1859.[2]

MARITIME LIENS—PILOT'S LIEN — PART OWNER— SEAMEN'S LIEN FOR WAGES — ASSIGNABILITY— PARTIES PLAINTIFF— SATISFACTION OF CLAIMS— SURPLUS.

1. It is well settled that the master of a steamboat or vessel has no lien for wages.

2. It does not. however. impair the lien of a pilot for wages, that when the boat or vessel was in port the pilot was recognized and officiated as master.

[See note at end of case.]

3. The acceptance of a draft drawn by the clerk of a boat in payment of a claim importing a maritime lien. which draft was never paid, is not a waiver of such lien.

4. The clerk of a steamboat, who has an interest of one-half in the boat, has no lien for wages.

5. The lien of seamen for their wages, being a personal privilege for their protection. is not assignable; and the assignee buying these claims for wages on speculation can have no standing in a court of admiralty.

[Cited in The Champion. Case No. 2.583; The Napoleon. Id. 10.011. Cited contra in The Sarah J. Weed. Id. 12,350; The Emma L. Coyne, Id. 4,466.]

6. Where it appears from the evidence that the names of the seamen are used in the libel as claimants for wages. and that they had assigned their claims. and that the assignee was the sole party in interest. the libel in the names of the seamen will be dismissed.

7. After satisfying the allowed claims for wages out of the proceeds in the registry, the surplus, if any, will be applied pro rata to the payment of the other claimants.

[Cited in The Lady Boone. 21 Fed. 733.]

[This was a libel for wages by Linus Logan against the steamboat Aeolian.]

Mills & Hoadly, for libellants.

Lincoln, Smith & Warnock, for interveners.

CHARGE OF THE COURT: : The original libel in this case was filed by Logan, asserting a claim against the steamer Aeolian for wages as pilot. A number of other claimants have intervened for wages, supplies, advances, etc. An interlocutory order has been made for the sale of the boat; a sale has been effected, and the proceeds are in the registry. The claims filed exceed the amount of these proceeds. A reference has been made to a commissioner to inquire into and report upon the nature of

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

[2] [Modified in Case No. 4,504.]

these claims; whether liens or not, and if liens in what rank or privilege they are to be viewed. The commissioner has reported on the matters referred to him, to which exceptions have been filed by different parties in interest. And these exceptions present the questions for the decision of the court. The commissioner has reported the claim of the libellant (Logan) for wages as pilot, as a valid maritime lien. This is excepted to on the ground that Logan acted in the double capacity of master and pilot, and has no lien for services in either. As master, the law is well settled; he has no lien for wages. His contract with the owners is on their personal credit, and not on the credit of the boat. While the reason and justice of this principle has been doubted by some, it seems now to be the settled law in this country. But the claim of Logan is not for wages as master, but as pilot. It is clearly proved that his employment on the boat was as pilot. and not as master. He performed faithfully and satisfactorily the duties of pilot when the boat was running. and while in port acted as master. There was no one known or recognized as master—there was no one strictly authorized to act in that capacity—but when Logan was not at the wheel, by common consent, he acted as such. This does not deprive him of his lien for wages as pilot. His claim must, therefore, be allowed, to be satisfied pro rata with others having the same priority of lien. The claim of Jenks, Winchell & Co., amounting to $300, is disallowed by the master, on the ground that they dealt with the clerk of the boat on his individual credit, and not on the credit of the boat. The facts in relation to this claim are that this firm are warehouse keepers, and that merchandise had been left with them for shipment on this boat, on which there were charges to be paid before the property could be shipped. Jenks, Winchell & Co. were liable for these charges. They consented, at the request of the clerk, to ship the property on the boat, and to take the draft of the clerk, instead of the cash—a draft on a bank in Iowa. This draft was not paid, and their debt is still due.

There can be no question that the claim of these parties is substantially a claim for an advance by them. for the benefit of the boat. for which they have a lien, unless they have waived it by the acceptance of the draft. The doctrine at common law is that a promissory note or draft, given for a pre-existing debt, does not extinguish the debt, and that the creditor, if the note or draft is not paid. may proceed on the original consideration. And this principle is recognized as applicable to maritime liens. The lien is not discharged by a draft or note for the claim, unless it clearly appears from the evidence that it was intended by the parties to have this effect. This principle was distinctly laid down by Judge Story, in the case of The Chusan [Case No. 2,717]. There is no reason for the inference that Jenks, Winchell & Co. re-

-ceived the draft as a full discharge of their lien on the boat; especially in view of the fact that the clerk who made it was pecuniarily irresponsible, and wholly unable to pay the claim, in the event of the non-payment of the draft. I have, therefore, no hesitancy in holding there was no waiver of their lien, and that it is next in priority of lien to the claims for wages. The report of the commissioner adverse to the claim of Alfred W. Hall for $1,061.13, for wages as clerk of the boat, is affirmed. It is in evidence that in March, 1858, Hall purchased an interest of one-half in the boat, and that his claim for wages covers the time in which he was so interested. And it does not affect the question that ne had executed a mortgage of his interest, which has never been foreclosed. He was the legal owner of an interest of one-half in the boat at the time this libel was filed. And as part owner, it is clear, he can have no lien for wages as clerk. It would be strange, indeed, that being a part owner, and as such liable in personam for the debts of the boat, he could have a lien, equal in priority to the just claims of others for wages earned. No authority has been cited sustaining such a doctrine, and it is presumed that none can be found. The claim of Hall is therefore rejected.

There are twelve seamen, who have joined in a claim for wages. It is in evidence, however, that they have sold and transferred their claims to Henry Wiche, who bought them on speculation at a heavy discount, and that this claim is prosecuted for his benefit, and that the seamen have no interest in it, although their names are used in this proceeding. It is clear that Wiche, the real party, can have no standing in a court of admiralty. A maritime lien for wages is in the nature of a personal privilege, for the protection of seamen, and is not assignable in the sense of transferring to an assignee the benefits of such personal privilege. In this view, the libel as to these seamen must be dismissed. The report of the commissioner in favor of the interveners for supplies, repairs to the boat, and money advanced for expenses, is affirmed. If, after paying the claims allowed for wages in full, out of the fund in the registry, there is sufficient to pay in full the other allowed claims, the fund will be so applied. If there is not enough for this purpose, the residue will be applied pro rata to the other claimants.

[On appeal to the circuit court the decision of this court, in allowing the master wages as pilot while he was receiving pay as captain, was reversed. Otherwise the decree of this court was affirmed. Case No. 4,504.]