## Buchanan *vs.* Comstock and Parks.

In an action between partners, for a settlement of the copartnership affairs and to recover a balance claimed by the plaintiff to be due to him, a receiver will not be appointed, to sell stock owned by the parties jointly, though in proportions dependent on the state of the partnership accounts, before it is judicially determined how much of the stock belongs to each party; where no insolvency is alleged, and the defendant denies the entire equity of the complaint, and offers and consents that one half of the stock may be transferred to the plaintiff, and to give security to indemnify him for any balance he may establish in his favor.

THIS was an appeal by the defendant Comstock, from an order made at the Albany special term, appointing John W. Thompson, Esq., receiver of 193 shares of stock of the Pioneer Paper Company, with power to sell the same, "if in his judgment the interests of the parties will be promoted by the sale," "at public auction," and requiring "all the parties to this action to forthwith assign and deliver said stock to said receiver, so that new scrip therefor may be issued to said receiver."

The stock originally belonged to the copartnership firm of S. A. Parks & Co., which was composed of Solomon A. Parks and the plaintiff Buchanan. On the 17th June, 1863, Parks sold and assigned his interest in all the stock originally owned by S. A. Parks & Co., being 198 shares thereof, to the defendant Comstock, which transfer was

Buchanan v. Comstock.

under seal and duly stamped. After this transfer to Comstock, the latter brought an action against the plaintiff Buchanan, to set aside a transfer on the books of the Pioneer Paper Company, of 113 shares of said stock which Buchanan had previously caused to be made to himself, and for which he had obtained new scrip, and delivered up the old scrip, on the ground that such acts were fraudulent and void as to Comstock, as assignee of Parks' interest in, and title to, the stock. On the 2d day of March, 1864, the said Comstock recovered a judgment in said action, declaring him the assignee and owner of Parks' interest in said stock, and setting aside the fraudulent transfer of the same to Buchanan, solely, and declaring the same canceled. After the commencement of the action of Comstock against Buchanan, last mentioned, Buchanan commenced this action to settle the copartnership matters of S. A. Parks & Co., claiming that he had advanced more than Parks—paid more debts; that the partnership was indebted to him in a large amount; and that he was therefore entitled to most of the stock belonging to the firm. The answer of Comstock denied the extent of his claim, and offered, in case it should turn out that the firm was indebted to him in any amount, so as to constitute any lien on the share of the stock so transferred to him by Parks, to pay it off, and discharge the lien, and thus relieve his share of the stock from such claim.

The case had been brought to trial before the referee, and the trial nearly concluded, when the plaintiff moved for the appointment of a receiver to sell the stock in question, before it was determined judicially whether the firm of S. A. Parks & Co. was, in fact, indebted at all to the plaintiff in any sum whatever, and if so, before the defendant Comstock, who was entirely responsible, could have an opportunity, to pay off and discharge such indebtedness.

The defendant Comstock offered, in his affidavit, to

divide the stock equally with the plaintiff, and give any security to pay off any sum which Buchanan might establish against his share, and tendered a bond in the sum of $10,000, duly executed, to pay and secure to him any sum he might establish against his share of the stock. But the court, at special term, (Justice MILLER presiding,) made the order in question, and Comstock appealed therefrom to the general term.

*A. Pond,* for the appellant.

The order should be reversed. I. The plaintiff utterly fails to make out a case authorizing the appointment of a receiver. There is no dispute as to the title to the stock in question, and the only question is whether the firm of S. A. Parks & Co. is indebted to the plaintiff, so as to give the latter any claim to, or lien upon, the share transferred by Parks to Comstock, to secure such indebtedness. To ascertain that, the plaintiff should go on with his action now pending before the referee, and the trial of which is nearly completed, and finish it up; and then, if there is anything his due, and there is any occasion for a receiver, in order to collect such debt, it will be time enough to appoint a receiver to sell. But at this stage of the action, when it does not appear certain that there is any debt to pay, it would be an extraordinary proceeding for a court of equity, where no insolvency is alleged, to interfere by appointing a receiver to sell Comstock's share of the stock in question, to discharge a lien which may possibly be hereafter declared to exist against it. This would emphatically be reversing the scripture rule, which declares that, "sufficient unto the day is the evil thereof." It is equally against law. In *Goodyear* v. *Betts,* (7 *How. Pr.* 189,) Harris, J., said: "The principle upon which the court directs property in controversy to be placed in the hands of a receiver pending the litigation is, that the party applying for a receiver has shown a probable interest in the

Buchanan *v.* Comstock.

property, and that there is danger of its being lost without such protection. The plaintiff charges, upon information and belief only, that the assignee is not the owner of property or effects of any description sufficient to pay his debts and liabilities. This allegation, undenied, would be sufficient to show that the property was in danger and required the appointment of a receiver. (*Connah* v. *Sedgwick*, 1 *Barb.* 210, *and cases cited.*) But the defendant's affidavits satisfactorily show that the plaintiff is mistaken in respect to the pecuniary condition of the assignee. There is, therefore, no ground for taking the assigned property out of his hands before the rights of the parties are determined by the judgment of the court." We say, here, that no insolvency being alleged, there is therefore no ground for the appointment of a receiver to take Comstock's property out of his hands, before judgment is rendered, determining the rights of the parties. So also in *The People* v. *The Mayor, &c.* (10 *Abb.* 116,) which was ejectment for land, where an injunction and receiver had been granted, on appeal from the order, the court say, on reversing the order: "Were this an equitable action in both form and substance, I think I would not appoint a receiver on the matters set up in this complaint. It is true an apparently good title is shown in the plaintiff to the premises in question. This is one essential element in a complaint, to entitle the plaintiff to a receiver, but it is not all. It must also appear that the appointment is necessary to protect the property, or its rents and profits, *pendente lite*. When the defendant really liable is responsible, then no such necessity can, under ordinary circumstances, be made to appear." In this case, I repeat, there is no pretense that Comstock is not entirely responsible, and no reason exists, therefore, for appointing a receiver. And see, to same effect, *Power* v. *Lester*, (12 *Abb.* 285, 295.) I repeat, therefore, that there are no grounds presented in the moving affidavits, for the appointment of a receiver.

II. Nor is the result changed at all, by the attempt of the plaintiff's counsel to call the stock in question partnership property, and thus endeavor to apply to it the principle applicable to partnership property. The assumption is erroneous. The purchase of Parks' interest in this partnership stock by, and its transfer to, Comstock, terminated the joint title to the stock, of Parks & Buchanan, and also its character as partnership property, and made Comstock and the plaintiff tenants in common of the stock, subject, of course, to an accounting between Buchanan and Parks. But it was no longer partnership property. (*Mumford* v. *McKay*, 8 *Wend.* 442. *Murray* v. *Murray*, 5 *John. Ch.* 60, 70. *Walsh* v. *Adams*, 3 *Denio*, 125.) The stock, therefore, no longer being partnership property, the principle applicable to such property does not apply, but instead thereof the ordinary principle applies, that where no insolvency exists, or is alleged, no receiver will be appointed, pending the action, nor until judgment is obtained declaring the rights of the parties. (*See cases cited to* 1st *point.*)

III. But if it be conceded that the stock is in fact partnership property, the result is the same, and no receiver should be appointed in this case; nor ought Comstock's stock to be sold. His title to an undivided half of the stock in question, subject to the accounting between the partners, has been conclusively established by the judgment in the action in his favor against the plaintiff and the Pioneer Paper Company, and the plaintiff at least is estopped to deny the effect of that judgment. Very well, then; if Comstock is both able and willing to pay off and discharge any lien or claim the partnership or Buchanan may have against his half of the stock, and thereby release or redeem it from the incumbrance, why should he not be allowed so to do? But what law, and especially what equitable principle is it, that prohibits a man the privilege of discharging, by payment, any lien there may be on his

property, be it legal or equitable, and thereby enabling him to retain the title to the property to himself, and prevent its sale, for the sole and only purpose of raising the money wherewith to discharge the lien or incumbrance upon the property? I maintain there is no such law, or principle. This property is susceptible of easy and equal partition and division. It is not like a horse or house, perhaps incapable of division, and therefore making a sale necessary in order to effect partition between the tenants in common. No, it is capable of easy and exact division, without injury to either party. And in regard to real estate, the law is that the same shall be partitioned between the parties as matter of right. " The statute authorizes a sale only where it shall appear to the court that the premises are so circumstanced that a partition cannot be·made without great prejudice to the owners." (2 *R. S.* 330, § 81. Van Arsdale v. *Drake,* 2 *Barb.* 601.) Such, also, is the rule at common law. (*Haywood* v. *Judson,* 4 *Barb.* 228.) And by analogy, the rule is the same in equity, as regards partition between tenants in common, of personal property ; that is, that a sale will only be ordered, when partition is "impracticable." (*Tinney* v. *Stebbins,* 28 *Barb.* 290.) Hence, the stock being such that it can be easily partitioned, and Comstock being entirely willing and able to pay whatever indebtedness, if any, constitutes a lien upon his share thereof,-most certainly a court of equity will not order it sold, against his protest. Under such circumstances, a sale is not necessary to protect or secure any right of the plaintiff, and Comstock offers now to divide the stock with Buchanan, and secure any claim which the latter may have, if any, on his share. And Comstock also tenders a bond to secure Buchanan any sum he may hereafter establish in the action, constituting a lien on his share of the stock ; and if that is not sufficient security, he offers to furnish any additional security required by the court. This is all Buchanan can rightfully claim, and more than the

court ought to require. (*Dunham* v. *Jarvis,* 8 *Barb.* 88. *The People* v. *Mayor,* 10 *Abb.* 111, 117. *Power* v. *Alger,* 13 *id.* 296. *Goodyear* v. *Betts,* 7 *How.* 187.) Besides, the amount, if any, due to Buchanan, from the firm, is small. The case of *Dunham* v. *Jarvis,* above cited, was a case of partnership, where the court refused a receiver, and took a bond.

IV. But suppose it proper to appoint a receiver; the order is erroneous. 1st. No sale is necessary. The property is not perishable, and there is therefore no occasion to sell it. 2d. But if there is occasion to sell it, the court ought to order it sold, and not refer it to the receiver to determine the matter. If the property is worth what is claimed, to wit, $150 a share, or about $30,000, it is very evident that the receiver, who is to receive his fees if a sale is made, will be a very indifferent person to determine whether the interests of the parties require a sale. He will be able to determine, pretty quick, that his own interest requires a sale of the stock, that he may receive his fees for the sale. It is like the fugitive slave law, now repealed, which provided a fee of $10 if the slave was returned to slavery, and only $5 if he was declared free. This provision in the order appealed from, is the nearest approach to the fugitive bill, of any law or order since the war commenced. The order itself should share the fate of the law referred to. 3d. Neither should the parties be required to transfer to the receiver. It can be of no use, unless it is expected the receiver shall vote at elections of trustees. But certainly that will be inequitable, to take the joint property, and put the title into the hands of a man to wield either, 1st. Exclusively for Buchanan's benefit; or, 2d. For Comstock's benefit; or, 3d. Use half of it for the benefit of one and half for the benefit of the other. This last would netralize it, and leave it, practically, where it is now.

But the order should be reversed *in toto,* with $10 costs

to the defendant Comstock, for opposing the motion at special term, and $10 on this appeal, and the plaintiff be required first to establish his claim, in the action.

*E. F. Bullard* and *J. H. Reynolds*, for the respondent.

*By the Court*, ROSEKRANS, J. If we look solely at the verified allegations of the complaint, in this action, it is difficult to discover upon what principle, or for what purpose, the order for the appointment of a receiver of the property of the firm of S. A. Parks & Co. was granted. The substance of those allegations is as follows : That in 1856 the plaintiff and the defendant Parks composed the firm of S. A. Parks & Co., and the firm had real and personal property with which it conducted the business of manfacturing paper, .until March, 1858, when their factory was destroyed by fire. Each partner was to have interest on the excess over one half of the capital invested, and they were to share equally the profits and loss. That on the 1st day of April, 1858, the plaintiff's capital exceeded Parks' more than $10,000, and the firm had lost $8000, including the loss by fire. Shortly after the loss, the partners agreed that the plaintiff should advance or procure means to rebuild the works, and that as soon as practicable the plaintiff should get a corporation formed for the purpose of taking the property of the firm ; that the property should be sold to such corporation ; and that out of the proceeds of the sale the plaintiff should have the right to withdraw sufficient to reimburse the amount of his capital and advances, and expenses of rebuilding, and the balance of the liabilities against the firm ; and if any assets remained, it should be divided *pro rata* between the parties, according to their shares of the capital. By this agreement it will be perceived that Parks was to receive no part of his capital until the plaintiff had been reimbursed *the whole of his capital,* and that out of the balance

of assets, after paying the plaintiff his entire capital and all his advances, and all the liabilities of the firm, Parks was not to be reimbursed his capital to the extent that such balance of assets would reimburse it, but was only to receive such proportion of said balance of assets as his capital bore to the capital invested by the plaintiff; and the plaintiff was to receive the residue of such balance of assets.

The complaint further alleges that the plaintiff advanced further capital to rebuild the works of the firm, became indebted for the residue, and the work of rebuilding proceeded while measures were being taken to organize the corporation, and the corporation referred to, called the Pioneer Paper Company, was organized about 1st April, 1859, for manufacturing purposes, with a capital of $30,000. That in March, 1859, the assets of the firm were worth about $20,000; and that by charging the plaintiff with all the former debts as assumed by him, the firm, on the 1st April, 1859, would owe the plaintiff upwards of $20,553.46, and Parks would then owe the firm $1753.46 and upwards. The complaint proceeds to state that about March, 1859, the partners agreed that most of the firm assets should be sold to the corporation as soon as it was organized, and that the firm name should be used to subscribe for stock in the corporation; that with a portion of the proceeds of the assets of the firm, the stock should be paid up; that the plaintiff should have the right to sell said stock to pay the debts of the firm or take the stock for his own benefit at par, and credit the firm with that amount towards the division and winding up of the firm affairs; and that the plaintiff would raise money upon the stock or otherwise, pay the firm debts, and bring the firm matters to a close; and after the payment of the firm debts and refunding to each party his capital and advances, it was agreed that the balance of said stock, if any, should be divided pro rata between the parties, according to their interests in the

firm. That in pursuance of this agreement, the plaintiff subscribed for $19,800 of said stock in the name of the firm, and the assets of the firm were sold to the corporation, and $19,800 of the proceeds were appropriated for the payment of said stock.

The complaint proceeds to state that during 1859 the debts remaining against the firm were pressing, and the firm could not meet them without the sale of stock, and that in December, 1859, the firm transferred 113 shares of the stock to the plaintiff, individually, to have and to hold to his individual benefit, and that this transfer was made pursuant to a previous agreement between the parties, that the plaintiff should have the right at any time to take stock at par, as so much toward refunding his share in the capital of said firm.

The complaint alleges that the plaintiff did pay the debts of the firm, in pursuance of said understanding, and has proceeded to wind up and close the business of the firm, and has credited the firm with 198 shares of stock at par, $19,800, and has charged the firm with all the debts paid by him; that he sold five shares of the stock, in 1860, which the defendant Comstock has since bought, and that Parks had full knowledge of the affairs of the firm, and had full and free access to the books of the firm and of said corporation, and knew that the plaintiff had taken said stock on the division as his own property, as aforesaid, and made no objection thereto, until about February, 1863, and afterwards looked over the matter, and was satisfied the plaintiff had done right in taking said stock, and so expressed himself, and assented to it, and ratified the transfer, and agreed that the plaintiff should retain the stock to the amount of his interest and capital in the firm, and only claimed sufficient of the stock to pay his interest in the firm, if anything was coming to him upon a final settlement, calling the stock par.

The complaint proceeds to allege that Parks has looked over the firm matters, and concluded that $2000, at least, remains due to the plaintiff, over and above the whole of the 198 shares of stock. It is also alleged that upon a full accounting of the partnership matters, the said sum of $1753.46 and upwards, before alleged to be due from Parks on the 1st April, 1859, with interest from that date, is due from Parks to the plaintiff. The complaint alleges that about June, 1863, Parks pretended to sell to the defendant Comstock, and *to assign to him conditionally*, a portion of his interest in the firm of S. A. Parks & Co., and that Comstock now claims that there is some interest in said firm owing to him.

These are substantially all the allegations of the complaint; and they show that the entire property and assets of the firm of S. A. Parks & Co. were invested in the 198 shares of stock of the Pioneer Paper Company; that the debts of the firm have all been paid by the plaintiff, and charged to him on the books of the firm; that the plaintiff has wound up and closed the business of the firm, and that with the consent of Parks, and pursuant to agreement, the plaintiff has taken the 198 shares of stock on the division, and that Parks subsequently looked over the firm matters and ratified the transfer of their 198 shares of stock to the plaintiff, and conceded that a balance of at least $2000 is due the plaintiff. They also show that the only assets of the firm not disposed of or adjusted, is the balance due the firm from the defendant Parks on the 1st of April, 1859, of $1753.46, and interest from that date.

And the plaintiff, without averring that the alleged transfer of the 198 shares of stock which was not perfect to vest in him not only the real, but also the apparent title to the stock, or that any one questions or proposes to question his title to it, asks, as part of the relief to which he is entitled, "that he may be adjudged to hold said stock transferred to him by said S. A. Parks & Co., as his indi-

vidual property, and that he be only charged with the same at par; and that the defendant be enjoined from voting upon any of said 198 shares of stock originally transferred to the plaintiff, as stated in the complaint, (except the five shares sold to Comstock,) or from transferring any portion of said 198 shares of stock, except said five shares; and that a receiver may be appointed of said joint property of S. A. Parks & Co., including all stock now held by them or by said defendants, or either of them, or by the plaintiff and Comstock jointly, which originally belonged to S. A. Parks & Co. In the light of the allegations of the complaint, and its omissions of allegation, that portion of the prayer for relief above recited, appears absurd. And the prayer for the appointment of a receiver of any portion of the 198 shares of stock, as joint property of the firm of S. A. Parks & Co., which is expressly alleged to have been long since transferred to the plaintiff, by the firm, is also absurd.

There can be no ground for a receiver in the case of joint ownership of property, when the joint owner who applies for the appointment has the property in his own possession and under his control. (*Smith* v. *Lowe,* 1 *Edw.* 33.) The injunction, as prayed for, could not be granted, as there is no allegation in the complaint of threatened or apprehended acts sought to be enjoined, and a receiver of property as joint property of the plaintiff and defendants, which is alleged to be the individual property of the plaintiff, and his right to which, as individual property, is not alleged to be questioned, nor his possession of it alleged to be disturbed, or threatened to be disturbed, was never, so far as my knowledge extends, appointed, or asked to be appointed, by the court. Indeed the 198 shares of stock mentioned in the complaint are not, so far as the allegations of the complaint show, a subject of this action. The plaintiff, taking his statement of his case as true, owned these shares as his individual property before suit, by per-

fect transfer, and no one, according to his allegation, seeks to dispute his title.

But the whole equity of the plaintiff's case is denied by the answer, and there is nothing in the voluminous papers used upon the motion to maintain the claims made by the plaintiff. The affidavit of Parks, set out in the case, in the matter of the election of trustees of the Pioneer Paper Company, at fol. 165, states *that since* he assigned his interest he has examined the firm accounts, and that if the plaintiff is charged with the whole 198 shares of stock at par, there was a balance due to the plaintiff at the date of the assignment, but Parks does not sustain the allegation that the transfer of 113 of the shares of stock to the plaintiff at par was with the consent of Parks, nor does he corroborate the statement of the plaintiff as to his claim of right to charge the 198 shares of stock to himself at par; besides, this claim of the plaintiff was found by the court, in the action of Comstock against the Pioneer Paper Company and Buchanan, not to be correct so far as the transfer of the 113 shares of the stock to the plaintiff was concerned, and it was declared that such transfer was without the authority, consent or approval of Parks, and that he never ratified, sanctioned or confirmed the same. The judgment in that case also required Buchanan to surrender up the certificates for the 113 shares of stock, to be canceled, and directed the Pioneer Paper Company to cancel the transfer to the plaintiff, and to issue scrip for that stock to the plaintiff and the defendant Comstock, jointly, and they are declared to be joint owners of said stock, subject to all equities existing at the time of the assignment to Comstock, between Parks and Buchanan as members of the firm of S. A. Parks & Co. It appears that this direction of the judgment has been complied with, and this stock now stands in the name of the plaintiff and Comstock. The remaining 85 shares may be assumed to stand in the name of the firm of S. A. Parks

& Co., and by the rule established as to the 113 shares, the plaintiff and the defendant Comstock are joint owners of those shares, subject to the equities mentioned above. The balance of $24,913.07 which the plaintiff claims in this case to be due him from the firm of S. A. Parks & Co., according to his own testimony taken in this case, appears to have been made up without crediting the firm with the dividend received by him upon the stock, amounting to $5444, and the defendant Comstock insists that upon a fair accounting in relation to the affairs of S. A. Parks & Co., nothing will be found due to the plaintiff. It appears, too, that in October 1864 a dividend of fifty per cent was declared on the 198 shares of stock, amounting to $9900, which the defendant Comstock consents that the plaintiff may draw, and this, with one half the stock at par in the plaintiff's name, charged to him, and the $5444 dividend received by the plaintiff, which he has not charged to himself, would cancel the balance which the plaintiff claims against the firm. Besides, the defendant Comstock offers and consents that one half of the 198 shares may be transferred to the plaintiff, and the other half to himself, and to give any security that the court shall require to indemnify the plaintiff for any balance he may establish in his favor against the firm of S. A. Parks & Co. Under the circumstances, a denial of the entire equity of the case made by the complaint, an adjudication unreversed that a material statement in the plaintiff's complaint is unfounded, an absence of any suggestion that the defendant is irresponsible, an offer on the part of the defendant Comstock which, if accepted, would indemnify the plaintiff against any possible loss, I cannot see the propriety of putting the property, of which the plaintiff and defendant are joint owners, into the hands of a receiver. It seems to me to be doing injustice to the defendant, in any case, to decide the whole of the disputed facts in favor of the plaintiff, in advance, without proof to sus-

tain his allegations, and especially unjust when the defendant proffers unquestioned security to the plaintiff against any possible loss.

The irregularities which have heretofore occurred in the election of trustees of the Pioneer Paper Company, arising in part out of the opposite claims to the 198 shares of stock, cannot affect the question whether a receiver should be appointed. Those irregularities have already been corrected by judicial decision, and the rights of the parties to the stock until the final determination of this action have been established by the judgment of this court, and it is to be presumed that they will be exercised in accordance with the judgment.

I think the order of the special term should be reversed, with costs.

[St. LAWRENCE GENERAL TERM, October 3, 1865. *Rosekrans*, *Bockes* and *James*, Justices.]