## THE CLARA A. McINTYRE.

### (District Court, E. D. North Carolina. May 17, 1899.)

1. BILLS AND NOTES—COLLATERAL SECURITY—CONDITIONS—MORTGAGES.

Liability of one on a note to a bank secured by a mortgage conditioned that the mortgage should be and remain a continuing security for all notes, bills of exchange, drafts, checks, and other evidences of debt to a specified amount of said party or a corporation with which he was connected, is not established where it appears that he had neither signed nor indorsed such note, that no demand on him for its payment had been made, that he had not been notified of renewals and the bank books do not show that he had any connection with the renewal of the notes.

2. ADMIRALTY—RULES—INTERVENTION.

Adm. Rule 34, providing that one may intervene and be heard in his own interest if he shall propound the matter in suitable allegations, and be admitted by the court, requires the court to pass upon the claim of the intervener to give him a standing in court.

3. CHAMPERTY AND MAINTENANCE.

An agreement that the purchaser of a note and mortgage from receivers, for which he pays nothing, shall foreclose the mortgage, bring all necessary suits, and pay all necessary costs, and pay the receivers one-half of what he may recover, he to retain the balance, is champertous.

4. SAME—CONFLICT OF LAWS.

That the common-law doctrine of champerty does not obtain in New York except as brought forward under the statutes cannot be urged in an action on a contract made in New York, to be performed in North Carolina, which is brought by one who buys under an agreement to divide the amount recovered, it not appearing that the purchaser is an attorney, as the courts of New York hold that "an agreement by one who is not an attorney to aid in defending a suit is illegal and void for maintenance."

5. SAME—RULE IN NORTH CAROLINA.

There can be no recovery in North Carolina on a claim founded on a champertous contract.

6. ASSIGNMENT OF NOTE BY RECEIVER—EVIDENCE OF AUTHORITY.

Recovery on a note assigned by receivers cannot be had unless it is shown that the assignment was authorized by the court.

7. MARITIME LIENS—EVIDENCE TO SUPPORT.

A claim for a maritime lien for money advanced at the special instance and request of the master will be denied where the deposition of claimant does not show at whose request the money was advanced, and it does not appear that the advancement was necessary for the navigation of the vessel, and neither the master of the vessel nor the agent through whom the money was paid are examined as witnesses, and the only evidence is the unsatisfactory testimony of claimant, as such liens are stricti juris, and will not be extended by implication or construction.

8. SAME—SEAMEN'S WAGES—RIGHTS OF ASSIGNEES.

The assignee of a seaman's claim for wages has no lien.

**9. SAME—REPAIRS OF VESSEL—MATERIALS.**

Repairs to a vessel, and materials furnished in making the same, will sustain a maritime lien, though the owner of the vessel was absent and unknown, where the repairs were made on the credit of the vessel, and were necessary, and such as would have been made by a reasonably cautious business man under the circumstances.

In Admiralty.

E. F. Aydlett and Hughes & Little, for libelant.
W. D. Pruden, W. M. Bowyer, and W. W. Clark, for intervener.
F. H. Beeslen, for owner.

PURNELL, District Judge. E. S. Willey and several others filed libels in admiralty against the steamer Clara A. McIntyre for materials furnished, seamen's wages, etc. It was admitted that all the claims filed by libelant were correct, and constituted maritime liens, except the claim of E. H. White and T. G. Lovegrove, which were contested by C. R. Johnson, an intervening petitioner, and the right of C. R. Johnson to intervene, and the claim of C. R. Johnson to the note and mortgage hereinafter referred to. A consent decree was therefore entered for a sale of the vessel, and commanding the United States marshal to pay the proceeds of sale into the registry of the court, subject to further order. On the 10th day of December, 1898, C. R. Johnson filed an intervening petition, which was subsequently abandoned, and which is now held insufficient, irrelevant, and untenable under the rules in admiralty. Again, on the 30th of November, 1898, the said C. R. Johnson filed an amended petition, in which he claimed to be the owner in his own right of a certain note in the sum of $2,500 and interest, executed by F. F. Brown to the Bank of Commerce, of Buffalo, N. Y., and secured by a mortgage to said bank on the steamer Clara A. McIntyre, and that said note and mortgage were assigned to him by said bank through its receivers, duly authorized; no part of which has been paid, and the whole is now due, without offset or counterclaim. This intervening petition was verified by H. T. Greenleaf, and again sworn to by C. R. Johnson, on the 10th day of January, 1899. Again, on February 4, 1899, C. R. Johnson appeared, and asked to file an amended claim. This was objected to by counsel for libelant, and the objection overruled by the deputy clerk, the commissioner to take the depositions; and the said Johnson filed in evidence vessel mortgage on Clara A. McIntyre, dated September 4, 1889, and a note of the Acme Wood & Fiber Company, dated September 8, 1896, together with an assignment of said papers by H. H. Persons and J. H. Hazell, receivers, dated October 21, 1898. This was objected to, and objection overruled, and an exception. Testimony was then introduced which showed all the written part of the note was in the handwriting of Andrew Brown, including the signature of the Acme Wood & Fiber Company, by Andrew Brown, president. The $2,500 note, signed as above, was first discounted by the Bank of Commerce September 10, 1889, and there was never any indorser on the note, which was renewed from time to time (every four months) without notice to or the consent of F. F. Brown, and no demand has ever been made on him for the payment of the note filed. At the time of the renewal of the said note, interest was

sometimes paid and sometimes not, and the bank accepted the renewal in place of the old note, and extended the time of payment in that way. The books of the bank do not show that F. F. Brown received credit for the note in question, and there is nothing on the books of the bank to show that F. F. Brown had any connection with or notice of the renewal note. The interest at the last renewal was charged to E. H. Kruger & Co., and on July 6, 1896, the discount on the Acme Wood & Fiber Company's note of $2,500 was paid in the same way; also on May 6, 1896; the same as to renewal of March 7, 1896, and of the January, 1896, renewal of the note. Under the general custom of the bank, the note would not have been discounted for F. F. Brown without his indorsement, and this note was never indorsed by F. F. Brown, and the note was not discounted for him. The cashier of the bank testified that there was no other collateral security held by the bank for this note except the vessel mortgage; that an account was also opened with F. F. Brown at the bank shortly after the mortgage was made, and continued for two years, when the account was closed. The assignment by Persons and Hazell, receivers, and their proper handwriting, was proved by a witness who says he was familiar with their handwriting. F. F. Brown was treasurer of the Acme Wood & Fiber Company, and in 1890 $20,850 of the paper of the Acme Wood & Fiber Company was credited to his account. About 1888, F. F. Brown purchased the tug McIntyre, and there is no evidence that he has ever parted with the ownership, except the mortgage of 1889. In answer to interrogatories propounded, C. R. Johnson answered that he purchased the note set out in his claim from the receivers of the Bank of Commerce of the City of Buffalo, N. Y.; that he paid nothing for said note, but agreed to pay therefor an amount equal to 50 per cent. of what he might recover by foreclosure proceeding; that the note was assigned to him by the receivers, and he purchased the same directly from them; that he first learned of the existence of the note from one of the receivers; that he has a written assignment of the note and mortgage, and files a copy; that there is no other agreement between himself and any other party regarding the note and mortgage than this: he bought the same, and had them assigned to him by the receivers, and holds the same for himself upon the agreement that he is to foreclose the mortgage, bring all necessary suits, and pay all necessary costs, and pay said receivers one-half of what he may recover, and retain the balance.

Thomas G. Lovegrove files several claims against the steamer McIntyre. Exhibit A, filed by him, amounting to $150.14, is for work and materials furnished, repairing the steamer. Exhibit B, amounting to $1,356.41, is for money advanced from March, 1897, to July, 1898, to pay the wages of the crew on the steamer. One claim of the Ætna Iron Works, of Norfolk, Va., amounting to $352.32, assigned to Thomas G. Lovegrove January 25, 1898, is for material furnished in repairing the steamer McIntyre from December 1, 1897, to December 21, 1897, inclusive. The other claim of the same company, for $421.03, is for work done and materials furnished the steamer from September 19, 1896, to October 10, 1896, and assigned to Thomas G. Lovegrove December 3, 1898. The claim of the North

Carolina Iron Works for material furnished and labor performed on the tug McIntyre, amounting to $52.36, was assigned to T. G. Lovegrove January 29, 1898, by the proprietor of said iron works. The claim of E. S. Willey, amounting to $73.54, for work done and material furnished in repairing said tug from March 23, 1897, to May 24, 1898, and assigned to T. G. Lovegrove August 30, 1898.

The claim of E. H. White is for $40 for a pump furnished the steamer McIntyre on a telegram received from E. H. Kruger, dated October 15, 1896, and charged to the steamer McIntyre. The credit was given to the steamer, and the pump accepted by the master. This claim is contested on the ground that it does not constitute a maritime lien, though there is no denial of the fact that the pump was furnished as claimed, accepted by the master, and used on the steamer.

The foregoing finding of facts is all that is deemed necessary for a proper understanding and a decision of the case. Much of the argument is based on the idea, unsupported by proof, that Lovegrove was one and the same as the Buffalo City Mills; that the steamer Clara A. McIntyre was in the employment of the Buffalo City Mills; hence the assignments to Lovegrove were null, because assignments of debt for which he was primarily liable. This is legal argument and theory without evidence, for there is nothing in the depositions showing any contract between the steamer McIntyre, her owners or master, with the Buffalo City Mills, or that Lovegrove was the Buffalo City Mills, except that he was the proprietor of such mills from March until December, 1897. Much incompetent, irrelevant, and impertinent testimony, which was objected to, and objections overruled, in attempting to establish this theory, make the depositions voluminous and costly. This seems to be the only result of a futile attempt to get testimony in other litigation, which has no bearing, directly or indirectly, on the question at issue. The evidence is that the steamer McIntyre was doing business in the harbor of Elizabeth City, and employed by such persons as needed her services, and, among others, the Buffalo City Mills.

The note claimed and introduced by Johnson cannot be held to be secured by or connected with the mortgage given to secure a debt due by F. F. Brown by the words which appear in the condition thereof, as follows: "All notes, bills of exchange, drafts, checks, and other evidences of debt of the said Frank F. Brown, or the Acme Wood and Fiber Company, and for any sum or balance of any form of indebtedness by either of said parties to said bank, to amount not exceeding twenty five hundred dollars, the instrument to be and remain a continuing security for the amount," under the circumstances set forth in the finding of facts. It is not deemed necessary to state at length the reasons for thus holding, as a glance at the facts will be sufficient. The decision of the case does not rest solely on this ground. The admiralty rule under which C. R. Johnson claims a right to intervene provides he may do so, and be heard for his own interest, if he shall propound the matter in suitable allegations, and be admitted by the court (Adm. Rule 34; The Two Marys, 12 Fed. 152); hence the

court must pass upon the claim of the intervener to give him a standing in court. The action of a commissioner to take testimony only has no binding force, and must be confined to the duties prescribed in the order of court. The admission of the intervening petition and amendments by the deputy clerk overruling the objections thereto was merely, therefore, pro forma, and without authority. The court must, under the rule, pass upon the intervener's claim in all its phases, and it is only by permission of the court of admiralty that the intervener can be heard.

It was insisted in the argument that the contract under which the intervener, C. R. Johnson, claims to hold the note and mortgage is champertous, hence void, and he has no standing in court. It is contended contra that, while said contract may be champertous, it is only void inter partes, and the libelant and the owner of the vessel cannot avail themselves of it as a plea in bar of Johnson's right to intervene or recover. Champerty—a bargain to divide the thing sued for, whereupon the champertor is to carry on the suit at his own expense, purchasing a suit or right to sue —was so much abhorred at the common law that a chose in action was not assignable. Champertors are spoken of as pests of society, who were perpetually endeavoring to disturb the repose of their neighbors, and officiously interfering with other men's quarrels. They were punished by a forfeiture of one-third of their goods and perpetual infamy. 4 Bl. Comm. 135; 4 Bouv. Law Dict. 236; Co. Litt. 368. The contract, as set forth in the answer of Johnson to interrogatories filed, is champertous under all the definitions. The difficulty in most of the reported cases was in deciding if a contract amounted to champerty, but no such difficulty arises in the present case. Johnson is a stranger, having no interest, direct or remote, as far as the evidence discloses, in the controversy. He secures by assignment, without paying a nominal consideration, on an agreement to pay expenses and divide what he recovers, a claim which the holders are not willing to prosecute. This is champerty. There is a marked tendency on the part of legislatures and courts to curtail the doctrine of champerty, and in many states it is held that the common-law doctrine does not obtain. A distinction is drawn between lawyers and laymen, generally on the ground that the former are authorized to prosecute and render professional services in this behalf in themselves valuable. It does not appear Johnson is a lawyer. He had no authority to conduct litigation, or render professional services, and his claim or contract must be considered wholly under those decisions applicable to laymen. The only apparent motive is to speculate in stale claims, and interfere in other men's business. It is almost universally held the courts will not give effect to such contracts. In North Carolina it is held, a contract in which the obligor engages to give the obligee (who was not authorized to appear for parties litigant and manage lawsuits) one-half of the land in dispute, or one-half its value, in case of recovery, as compensation for his services in the management of the suit, is against public policy, and void. Munday v. Whissenhunt, 90 N. C. 458, and cases cited. So that, if this contract was

made or to be performed in North Carolina, under the laws of the state it would be void. But it may be said that this was a New York contract, and would be governed by the laws of that state. While it is held that the common-law doctrine of champerty does not obtain in New York except such as brought forward in the Revised Statutes of the state (Durgin v. Ireland, 14 N. Y. 322; Voorhees v. Dorr, 57 Barb. 580; Fowler v. Callan, 102 N. Y. 395, 7 N. E. 169), it is also held "an agreement by one who is not an attorney nor counselor to aid in defending a suit is illegal and void for maintenance." Burt v. Place, 6 Cow. 431; Ward v. Van Bokkelen, 2 Paige, 289. The two terms "champerty" and "maintenance" are generally used together, and the cases in both states, the laws of which might affect the contract under consideration, were stronger in favor of sustaining the contract than the one at bar. It is not necessary to consider the many decisions in other states. In Burnes v. Scott, 117 U. S. 588, 6 Sup. Ct. 869, it was held a champertous contract between the plaintiff and his counsel could not be set up as a plea in bar of recovery on a note, but this suit was in the name of the real party in interest, the payee in the note, and in the opinion the following language of the vice chancellor, who delivered the opinion in Hilton v. Woods, L. R. 4 Eq. 432, is quoted with approval:

"I have carefully examined all the authorities which were referred to in support of this argument, and they clearly establish that, whenever the right of the plaintiff in respect to which he sues is derived under a title founded on champerty or maintenance, his suit will, on that account, necessarily fail."

In the case at bar the foundation of the intervener's claim is the champertous contract. If Johnson should recover, the contract is void, admittedly, between the parties, and the receivers may possibly elect to repudiate, and recover again on the note or mortgage. The contract, if illegal and void, can confer no rights, and, like a void judgment, may be taken advantage of by any one; hence, while, if the intervening petition had been filed in the name of the true owners of the note and mortgage, no advantage could be taken of a champertous contract with the attorney or solicitor of plaintiff, to hold that advantage cannot be taken of the title which he sets up as the basis of his claim and standing in court would be to give countenance to illegal and void contracts. This the court will not do. The intervening petition of Johnson must fail, based as it is upon champerty and maintenance.

Again, the assignment is made by receivers, who are officers of the court, and no authority of court is shown for the contract set out as entered into by them with C. R. Johnson. Hence it is ordered, adjudged, and decreed that the intervening petition of C. R. Johnson be, and the same is, dismissed, and the costs of such petition, and the costs incident thereto, including the process and expense of taking depositions, rendered necessary thereby, to be taxed against C. R. Johnson and the sureties on his stipulation. There are other objections which might be held against the intervening petitioner, but, as this view disposes of this branch of the case, it is not necessary to argue or decide them.

In the libel filed by T. G. Lovegrove (third allegation) he alleges

that at various times between March, 1897, and July 30, 1898, at the special instance and request of the master, he supplied and paid to said master $1,356.51, as detailed in Exhibit B, in order to pay persons employed by said master on the steam tug, and it was so used; that the funds were furnished upon the credit of the vessel, and not the owner. This is denied generally, though F. F. Brown, the owner of the vessel, admits that, if the claims are just and true, a maritime lien exists. It is not upon the allegation, but upon the proof, that the claim set up by Lovegrove must be determined. The deposition of T. G. Lovegrove is indefinite and unsatisfactory. He does not say at whose request the money was advanced, and all that can be satisfactorily determined from his testimony is that he had claims against the vessel; thought her good for the amount; the money was advanced, by his authority, sometimes through Kruger, and he does not know to whom it was paid; afterwards he said it was money paid by him, or at his instance, to parties who had furnished labor and materials to the boat. It does not anywhere appear the advancement was necessary for the navigation of the vessel. She was doing a general towing business in the harbor, and probably earning more than enough to pay expenses. Neither the master of the vessel nor the agent through whom the money was paid are examined as witnesses, and the only evidence on the subject is the unsatisfactory testimony of Lovegrove. This is not definite and convincing, such as is required to establish a maritime contract or lien. Such liens are stricti juris, and will not be extended by implication or construction. The Yankee Blade, 19 How. 82; Pratt v. Reed, Id. 359; The Sultana, Id. 362. They must be founded upon contract or given by law. The claim of a seaman for wages would be a lien on the vessel (seamen are special wards of the admiralty court), but the assignee of a seaman's claim has no lien. The Aeolian, 1 Bond, 267, Fed. Cas. No. 8,465; The Freestone, 2 Bond, 234, Fed. Cas. No. 12,143; The Patchin, 12 Law Rep. 21, Fed. Cas. No. 10,794. In this instance there was no assignment even; there is no evidence of necessity; in short, there is nothing in the case upon which the claim for a maritime lien can properly be based. The burden of proof is upon the libelant to make out his claim. This he has failed to do; hence the claim of T. G. Lovegrove, as set forth above, is disallowed, and his libel in this behalf (the third allegation and Exhibit B) is dismissed.

The other claims as set forth in the libel of T. G. Lovegrove are for repairs to the steamer, and materials furnished in making such repairs. The owner of the vessel was absent and unknown; the repairs were made on the credit of the vessel, and they seem to have been necessary, and such as would have been made by a reasonable, cautious business man under the circumstances. These facts make these claims maritime liens. They were assigned for a valuable consideration, and in due form; hence T. G. Lovegrove, being the real party in interest, is entitled to have these claims thus assigned paid to him from the proceeds of the sale of the vessel after the payment of those claims having priority,—seamen's wages.

The claim of E. H. White is a maritime lien under the facts as found, and will be paid in its order as above stated.

A decree will be drawn and entered in accordance with this opinion. It is so ordered and adjudged.