## Case No. 10,794.

### PATCHIN v. The A. D. PATCHIN.

[12 Law Rep. 21.]

District Court, N. D. New York. 1850.

SEAMEN—ASSIGNMENT OF WAGES — RIGHT OF ASSIGNEE.

An assignment by a mariner of his wages confers upon his assignee no right to maintain a suit in rem against the vessel for the recovery of the wages assigned.

[Quoted in Sturtevant v. The George Nicholaus, Case No. 13,578. Cited in The Champion, Id. 2,583; The Napoleon, Id. 10,011; M'Carty v. The City of New Bedford, 4 Fed. 827; Ross v. Bourne, 14 Fed. 862.]

[This was a libel for wages by Aaron D. Patchin against the steamboat A. D. Patchin, Harry Whitaker, claimant.]

Mr. Daniels, for petitioner.
Mr. Talcot, for claimant.

CONKLING, District Judge. A libel having been filed, and a warrant of arrest issued and executed against the Patchin, in behalf of two seamen, for wages, the petitioner soon afterwards presented his petition, setting forth that he was the assignee of the wages due to a large number of other seamen who had also served on board the Patchin, whose claims in the aggregate amounted to the sum of $2,385.11, as appeared by certificates given to them respectively, at the time of their discharge in September last, by the check of the Patchin. The petitioner further states that this sum was advanced by him to P. S. Marsh, at his request, and upon his representation that the seamen had become clamorous for their pay, for the purpose of enabling Marsh to pay them off. Marsh, in making this application to the petitioner, appears to have been acting in behalf of D. N. Barney, who was absent at the time, and who claimed to be the owner of the Patchin as purchaser at a sale by the sheriff of Erie county, in virtue of a mortgage. When the money was paid to the seamen by Marsh, he took from each of them an assignment of his demand to Barney; which assignments the petitioner alleges were taken by his direction and for his benefit, with the expectation on his part, that the money would soon be refunded, and that the mariners' lien would remain valid.

These transactions occurred in September last; and in November last, Barney executed assignments of the same demands to the petitioner. The demands of the original libellants have in the meantime been satisfied, and the petitioner now asks for a decree in his favor for the amount so by him advanced, and for the sale of the vessel. The claimant, in his answer, insists that Barney claimed to be the owner of the Patchin, and that the money was in fact paid by him in that character; and he denies that the mariners' lien passed to the petitioner in virtue of the assignments, admitting the money to have been furnished by the petitioner on his own account. The evidence proves that the petitioner did in fact advance the money to Marsh, and that assignments were executed, as already stated; but it sheds no light upon the motives or expectations which governed the petitioner. Without adverting more particularly to the allegations of the answer, it is evident that under any view of the case unwarranted by the facts appearing before the court, it is incumbent on the petitioner to maintain that an assignment by a mariner of his claim to unpaid wages confers upon his assignee a right to maintain a suit in rem in his own name for the recovery of such wages against the vessel on board of which the services of the mariner were performed.

The counsel for the petitioner insists that although choses in action are at law held not to be assignable, yet that being held valid in chancery, this court administering justice, as it is required to do, according to the principles of equity, is bound to recognize and enforce the title set up by the petitioner. No judicial decision to this effect has been cited, nor have I been able to find any. Undoubtedly, a court of admiralty, in the exercise of its powers as such, may, and sometimes should, disregard the narrow and technical distinctions of common law proceedings, and apply those which under like circumstances, would govern the decision of a court of chancery. But this is true with regard only to these matters, which, independently of these principles, fall strictly within the scope of the admiralty jurisdiction. It was correctly argued by the counsel for the petitioner, that in cases arising ex contractu, the admiralty jurisdiction depends on the nature of the contract; and it is true, also, that this jurisdiction is not always confined to the immediate parties to the contract. Thus a bottomry bond is assignable and may be enforced in the name of the assignee. But bottomry is an express hypothecation, and binds the ship to the lender and his assigns. So also is a bill of lading assignable, or rather negotiable, and the holder may in this country maintain an action in the admiralty upon it, in his own name. But the quality of negotiability is given to this instrument by law for the benefit of trade, and its transfer moreover carries with it the title to the goods shipped, and of course the right to maintain a suit upon it for their value in case of their loss. The right of the mariner to proceed

against the ship in specie, is conferred upon him for his own exclusive benefit. It arises by implication, and exists independently of possession. Its object is the more certainly to secure to him the hardly earned fruits of his perilous and useful services. When, therefore, his wages are paid, no matter by whom, the design of the privilege is answered; and, to say the least, it is very questionable whether he would be benefited by the capacity to transfer it to another: for if this power would sometimes enable him to obtain immediate payment, it would also expose him to imposition through his credulity and proverbial improvidence. It may well be apprehended, also, should this become the established and known law, that advantage would be taken of it for the gratification of unworthy feelings, at the expense of ship owners. The power to arrest a ship for the purpose of enforcing the payment of a debt, however insignificant, is a privilege liable to great abuse, even when confined to the mariner; insomuch that congress has seen fit by well known special legislation, to regulate and restrict this right. No process against the vessel can lawfully issue without a magistrate's certificate granted after summons to the master; and when the amount recovered is less than $100, the costs recoverable are limited to one half of the amount. A privilege regarded with so much jealousy by the legislature ought not to be unnecessarily extended by the courts. Implied liens are admitted with unsparing caution by the common law. Being allowed for the benefit of trade, they are limited to that object, and are held, also, to be strictly personal. The right of lien depends on the actual possession by the person claiming it, of the goods to which it is attached; and if he parts with the possession, the lien is irretrievably lost.

In the absence of any authority to the contrary, I am of opinion that the mariner's lien ought in like manner to be considered as restricted to its design, and as merely personal. The petitioner cannot justly complain of being denied the privilege of maintaining a suit in rem in the admiralty. The ordinary forms of remedy in favor of an assignee of a chose in action are open to him in common with all others.

The petition must be dismissed, with costs.[1]

---

[1] We suppose the principle of this decision is undisputed. A mariner's right to proceed in rem for wages, is a personal privilege, and the jurisdiction of the court is referable to the position of the libellant quite as much as to the character of the contract. The reason assigned in the reign of James I. by the common law courts in refusing a prohibition to the admiralty in a case of mariner's wages, was that the case was one of "poor mariners, who might not be delayed in the admiral's court." The practice in this part of the country has uniformly proceeded on this principle, but we are happy, in the present crude state of the admiralty law in the Western country, to publish an opinion of so able a judge.