

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable O. S. Fraps
State Chemist
Chief, Division of Chemistry
Texas Agricultural Experiment Station
College Station, Texas

Dear Sir:

Opinion No. O-4792
Re: Is it the duty of the
State Chemist to col-
lect the tax on the fertil-
izer sold to the AAA by the
United States Chemical
Company for distribution
in Texas and for them to
attach tax tags, and re-
lated questions?

Your letter requesting the opinion of this Depart-
ment on the questions stated therein reads in part as follows:

"Under date of June 13, 1942, you kindly
furnished Opinion O-4617 regarding the collection
of inspection tax on fertilizer purchased outside
of the state by the Agricultural Adjustment Adminis-
tration and distributed in Texas.

"This matter has now come up in another form.
The United Chemical Company of Dallas, Texas has
been awarded the contract to supply the Depart-
ment of Agriculture through the AAA with a quantity
of bagged superphosphate. The Texas fertilizer law
requires fertilizer to have printed on the bag or
tag the net weight, the name of the fertilizer, the
guaranteed composition of nitrogen, available phos-
phoric acid and potash, and the name and address
of the manufacturer. The Agricultural Adjustment
Administration has suggested to the United Chemical
Company that the bag be printed as follows:

Honorable G. S. Fraps, Page 2

'Superphosphate furnished by Agri-
cultural Adjustment Administration for
use only in carrying out soil building
practices, manufactured by United Chemi-
cal Company, Dallas, Texas.'

"The guaranteed analysis and the net weight
are both omitted. Some of the officials of the
Agricultural Adjustment Administration have pro-
posed to various state officials that in place of
paying the tonnage tax, the AAA pay for analyses
of each sample collected for inspection. With
the payment so made it would be considerably less
than the amount of the inspection tax.

"In your Opinion O-4617 you state a private
person, firm, or corporation selling commercial
fertilizer in a state to the Agricultural Adjust-
ment Administration is subject to its laws. The
fact that the sale is made to the Federal instru-
mentality does not clothe the vendor with the immun-
ity possessed by the vendee. The same opinion was
expressed by the solicitor of the U. S. Department
of Agriculture in the opinion of which I furnished
a copy to you.

"Please advise me if it is my duty as State
Chemist to collect the tax on the fertilizer sold
to the AAA by the United Chemical Company for dis-
tribution in Texas and require them to attach tax
tags.

"Please advise if it is my duty to require the
United Chemical Company to register this fertilizer,
attach the information required by the fertilizer
law, report the sale of this fertilizer and other-
wise to comply with the requirements of the fertili-
zer law.

"Please advise if I have authority under the
law to arrange with the Agricultural Adjustment
Agency to pay for samples analyzed or otherwise
modify the Texas fertilizer law with respect to the

Honorable G. S. Craps, Page 3

> fertilizer sold to them by the United Chemical
> Company of Dallas for use within the state of
> Texas, in place of the tonnage tax."

The Texas Revised Criminal Statutes, 1925, Articles 1709 through 1720, and civil statutes, Articles 94 through 108, regulate the sale of commercial fertilizer within the state of Texas.

Our Opinion No. O-4617 which is referred to in your letter as quoted above, among other things, holds in effect that the Agricultural Adjustment Administration is a federal agency or instrumentality, and that the inspection tax or fee cannot be collected from the Federal Agency. However, this opinion further holds that "a private person, firm, or corporation selling commercial fertilizer to the Agricultural Adjustment Administration in Texas is subject to its laws; the fact that the sale is made to the federal instrumentality does not clothe the vendor with the immunity possessed by the vendee".

It is further stated in the above mentioned opinion that:

> "* * *.

> "It is a familiar principle, established
> since McCulloch v. Maryland, 4 Wheat. 316 (U.S.
> 1819), that the States cannot interfere with,
> burden, or impede the Federal government or its
> authorized instrumentalities in the exercise of
> any of the powers vested by the Constitution of
> the United States in the Congress of the United
> States. The principle has been announced most
> frequently in those cases involving an attempt
> to collect a State tax from a Federal instru-
> mentality. It has, however, equal application
> to the enforcement of State regulatory laws
> against Federal instrumentalities. Johnson
> v. Maryland, 254 U. S. 51; Hunt v. U. S. 278
> U. S. 96; Arizona v. California, et al, 283
> U. S. 423; Ohio v. Thomas, 173 U. S. 276; Easton
> v. Iowa, 188 U.S. 220; Ex parte Willman, 227

Fed. 819; Posey v. T. V. A., 93 F. (2) 726;
United States v. Query, 21 Fed. Supp. 784.

"The exaction presently involved is an
inspection fee, rather than a tax. But whether
it be a tax or an inspection fee, an exertion
of the taxing power or of the police power
of the State, it operates directly and immediate-
ly upon the Federal instrumentality in the exer-
cise of the power conferred upon it by the Con-
gress, and directly burdens the instrumentality
in the exercise of that power. The agency of
the United States is immune from and cannot be
required to pay the fee or tax involved.

"* * * *."

In view of the foregoing, we respectfully answer
your first question as quoted above, in the affirmative. As
above stated, a private person, firm, or corporation selling
commercial fertilizer to the Agricultural Adjustment Adminis-
tration in Texas is subject to its laws; the fact sale is made
to the Federal Instrumentality does not clothe the vendor
with the immunity possessed by the vendee.

We answer your second question as stated above in
the affirmative. We think that the case of Alabama vs. King
and Boozer, 314 U. S. 1, specifically supports our conclusion
with reference to your first and second questions. Also see
the case of James vs. Dravo Contracting Company, 302 U. S.
114.

We respectfully answer your third question as
stated above in the negative. The Legislature alone is
authorized by the constitution (Article 1, Section 28) to
suspend any law of the State. It is stated in Texas Juris-
prudence, Volume 39, page 136:

"* * * but in exercising power of suspending
the operation of the general law, it is the general
rule that the Legislature must suspend the law
generally and as a whole, and cannot suspend it for

Honorable G. S. Fraps, Page 5

individual cases or particular localities." * * "

Trusting that the foregoing fully answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Ardell Williams*

Ardell Williams
Assistant

AW:nw

APPROVED SEP 10, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY ___
CHAIRMAN